## CITY OF NEW YORK v. NATIONAL BULK CARRIERS, Inc.
### Nos. 90, 91.

Circuit Court of Appeals, Second Circuit.

Nov. 15, 1943.

Earle Farwell, of New York City, for appellant.

Edward Ash, of New York City, for appellee.

Herbert B. Lee, of New York City, for City of New York.

Before L. HAND, CLARK, and FRANK, Circuit Judges.

PER CURIAM.

In this case, as is frequently true of collisions, the place of collision is all important; and, as is almost always true, that place is also hard to determine. The judge merely found that the collision "did not occur close to Hallets Point, but further

over, toward Mill Rock." That, although vague, is as precise as the testimony warranted, and certainly we should not be justified in saying that it was "clearly erroneous." It is true that Reissar, the pilot, and Mowry, the master of the tanker, and Skogen, the master of the tug on her starboard bow, put the collision close to the shore, and Gross, the master of the following tanker, confirmed their testimony. On the other hand, Clark, the master, and Stringer, the deck hand of the tug, put it even nearer to Mill Rock than to Hallets Point, and so did Magaldi, the bargee. The judge saw all these witnesses except the masters of the two tankers, and he also saw the two witnesses who must be accounted altogether disinterested: Kirk, the pilot of the municipal fireboat, and Woods, the master of the tug which was coming out of the Harlem River. Kirk put the collision at a point on the chart about 1600 feet east-north-east of Hallets Point Light; Woods, at a point about 300 feet north (some 400 feet nearer the shore than Clark). Kirk was clearly wrong in the distance from where he stood, but if one draws a line from his station to the point which he marked on the chart, it very nearly passes through Woods's spot. This is significant, because it was harder for him to measure the distance directly in the line of his vision than the angle. Taking the testimony as a whole the more reasonable probability is that the collision occurred between 400 and 500 feet north of the Light, which conforms to the finding that it was not "close to Hallets Point." Moreover, unless the tug was unaccountably inattentive, it is unlikely that she should have let her tow get nearer to the Astoria shore. The ebb sets toward Pot Cove and then turns off to Mill Rock, and proper navigation requires a tow to be drawn over to the westward after passing under the Triborough Bridge.

■ The next question is at what distance the vessels could have seen each other, and that in turn depends upon whether the tow was visible from the tanker across Hallets Point. Here too the testimony is in conflict. The pilot and master of the tanker said no, as did the master of the attendant tug, though with some qualification; but Kirk, Woods and Clark thought

otherwise. On the chart there is a building some 600 feet south of the Light which must certainly obstruct the view towards Negro Point of an east bound vessel. However, a line drawn from a point 100 feet from Negro Point to the corner of that building will cut the Manhattan shore south of 84th Street, from which it can be easily plotted that a vessel coming up, even no more than 175 feet off the Astoria shore, will get a view of a tug 100 feet from Negro Point when the up bound vessel is over 1000 feet below the Light. Not only was there evidence therefore to support the twentieth finding—that the vessels were "informed" of each other's approach—and the twenty-first—that the tanker could see over Hallets Point—but the bare record would independently satisfy us that both were true.

■ These findings end all debate, for the respondent does not challenge the custom which requires an east-bound vessel to hold back behind Hallets Point when advised of the approach of a west-bound. That custom was especially imperative here. The tow, sprawled out upon the ebb as it necessarily was, was extremely difficult to manoeuvre; the tanker, bucking the tide with a helper tug, was in complete control of her movements. By far the most reasonable explanation is that her lookout was extremely negligent. In the light of these circumstances, the failure of the tug to sound a passing signal did not, as the judge found, "contribute to the collision"; and it becomes unnecessary to decide whether she should have blown a second bend signal after passing the Triborough Bridge.

■ It appears to be impossible to convince the bar that we will disturb findings of fact as seldom in admiralty causes, as in any other. Whether there lingers a notion —never in fact justified—that because an appeal in the admiralty is a new trial, the scope of our review is broader, we cannot know; but over and over again appeals are taken without the least chance of success except by oversetting findings of fact upon disputed evidence. In order to meet this persistence we may in the end find ourselves forced to invoke the penalty provided in Rule 28(2) of this court.

Decree affirmed.